UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSÉ ANTONIO JAIMES BRITO, JAVIER DE LA PAZ EVANGELISTA, CREACIONES INNOVADORAS EN EXHIBICIÓN S.A. DE C.V., and MEXCELANIUS PRODUCTS CORPORATION, <br><br> Plaintiffs, <br><br> v. <br><br> KARINA URBINA D/B/A DEL REY, and MOISÉS BRITO, <br><br> Defendants. | No. 18 C 2276 <br><br> Chief Judge Rubén Castillo |

## MEMORANDUM OPINION AND ORDER

José Antonio Jaimes Brito ("José Brito"), Javier De La Paz Evangelista ("Evangelista"), Creaciones Innovadoras en Exhibición S.A. de C.V. ("Creaciones"), and Mexcelanius Products Corporation ("Mexcelanius") (collectively, "Plaintiffs") filed this trademark and copyright infringement suit against Karina Urbina ("Urbina"), who Plaintiffs allege is doing business as "Del Rey," and Moisés Brito (collectively, "Defendants"). (R. 1, Compl.) Defendants move to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). (R. 27, Am. Mot.) For the reasons stated below, the motion is denied.

### BACKGROUND

"Mole" is the name of a Mexican delicacy sauce that contains dozens of ingredients and is carefully prepared over several hours or even days. (R. 1, Compl. ¶ 10.) The complex process of making mole involves balancing the spiciness, sweetness, and sourness of ingredients, as well as adding thickening agents and other ingredients for flavor enrichment. (*Id.* ¶ 11.) Ingredients

can include but are not limited to chili peppers, spices, dried fruits, sugar, chocolate, sour tomatillos, nuts, and aromatic cloves. (*Id.*) The ingredients are stirred together in a heated cauldron, eventually producing a rich and thick mixture that is poured over a variety of Mexican dishes, often turkey and chicken dishes. (*Id.* ¶ 12.) Mole is tied to Mexican culture and is often considered the "national dish" of Mexico. (*Id.* ¶ 14.) Over the last fifteen years, this delectable sauce has become increasingly popular in the United States. (*Id.* ¶ 15.)

In the late 1990s, José Brito's uncle, Javier Brito, created the "Del Rey" mole recipe, the "DEL REY" name and trademark, and business operations for manufacturing mole in Iguala, a city in the Mexican state of Guerrero. (*Id.* ¶ 16.) After two decades, DEL REY became a venerated brand of mole in Mexico. (*Id.* ¶ 17.) In 2000, Javier Brito designed a label for DEL REY mole containers featuring a large maroon banner with the stylized name "Del Rey" in gold and a crown on top of the "e" in "Rey," as follows:



(*Id.* ¶ 18.)

In 2001, Javier Brito, operating together with Fabricas De Mole Rey, S.A. de C.V. ("Fabricas"), registered the DEL REY trademarks with the Mexican Institute of Industrial Property, which is Mexico's trademark office. (*Id.* ¶ 19.) For fifteen years, Javier Brito spent significant money and effort developing, establishing, and expanding the DEL REY mole product and brand, which achieved success in Mexico. (*Id.* ¶ 20.)

In 2013, after witnessing DEL REY mole's popularity within Mexico, José Brito and Evangelista (the "Owner Plaintiffs") decided to distribute DEL REY mole in the United States. (*Id.* ¶ 22.) In July 2014, the Owner Plaintiffs allegedly purchased Fabricas for $460,000, including Fabricas' customer lists, equipment, recipes, manufacturing techniques, and the DEL REY trademarks. (*Id.* ¶ 23.) The Owner Plaintiffs then added elements to the DEL REY label's artwork, including an original turkey design at the top left of the label, a ribbon containing a crown and the words "special especial," and a gold banner containing either the word "TELOLOAPAN" or "IGUALA, GUERRERO" in maroon letters at the bottom of the label, as follows:



(*Id.* ¶ 24.) The Owner Plaintiffs filed copyright registrations for the turkey and crown designs depicted above. (*Id.* ¶ 25.) Since 2014, the Owner Plaintiffs have directed the manufacturing and labeling of DEL REY mole in Mexico through their exclusive manufacturer, Creaciones, which is a company owned and operated by the Owner Plaintiffs' wives. (*Id.* ¶ 26.) The Owner Plaintiffs and Creaciones also registered DEL REY mole with the U.S. Food and Drug Administration ("FDA") and complied with the FDA's mandatory chemical testing. (*Id.* ¶ 27.)

In December 2014, the Owner Plaintiffs allegedly entered into a distribution agreement with Defendant Moisés Brito—Javier Brito's brother, (R. 28-1, Moisés Brito Aff. at 2)—and Eric Bryan ("Bryan") to distribute DEL REY mole in the United States. (*Id.* ¶ 28.) Pursuant to the distribution agreement, the Owner Plaintiffs sold DEL REY mole to Moisés Brito and Bryan at a discounted price, and then Moisés Brito and Bryan could then distribute and sell DEL REY mole to retail stores and consumers in Illinois and other locations throughout the United States. (*Id.* ¶¶ 28-29.) Moisés Brito and Bryan, however, allegedly failed to pay the Owner Plaintiffs for several shipments of DEL REY products they had received. (*Id.* ¶ 30.) The Owner Plaintiffs then allegedly terminated Moisés Brito and Bryan as distributors in October 2016 and granted Mexcelanius the exclusive rights to distribute DEL REY mole in the United States. (*Id.* ¶¶ 30-31.) Since 2014, the Owner Plaintiffs have sold DEL REY mole in Chicago, Georgia, Texas, and New York, and they intend to expand their business to other locations in the United States. (*Id.* ¶ 32.)

Urbina is Moisés Brito's wife, (R. 28-1, Moisés Brito Aff. at 4), and she allegedly had direct access to DEL REY products and "know-how" through Moisés Brito, (R. 1, Compl. ¶ 34). Plaintiffs allege that from February 2016 to May 2017, Urbina filed several trademark applications and other documents with the United States Patent and Trademark Office claiming rights in the Owner Plaintiffs' trademarks. (*Id.* ¶¶ 35-45.) Plaintiffs claim that Urbina, with the assistance of Moisés Brito, made and distributed mole using "counterfeit" DEL REY labels and packaging. (*Id.* ¶¶ 46-47, 54-56.) Plaintiffs allege that Defendants intentionally copied the Owner Plaintiffs' trademarks to deceive consumers into believing that Defendants' mole was authentic DEL REY mole even though Defendants produce and sell "counterfeit" and "inferior" mole. (*Id.* ¶¶ 48, 54.) Defendants allegedly sell their counterfeit mole in Georgia and Illinois, including in

at least nine different Chicago retail stores. (*Id.* ¶ 54.) Plaintiffs claim that several Chicago stores have expressed confusion as to "what is and what is not authentic DEL REY mole," and that Chicago stores have "refused to buy and sell the Owner Plaintiffs' mole because they sell [Defendants'] infringing products." (*Id.* ¶¶ 55-56.) Urbina has also allegedly created social media pages holding herself out as the authentic source of DEL REY products in Atlanta. (*Id.* ¶¶ 58-59.) Plaintiffs claim that Defendants' conduct has diverted customers and tens of thousands of dollars in sales. (*Id.* ¶ 61.)

## PROCEDURAL HISTORY

On March 29, 2018, Plaintiffs filed the present lawsuit. (*Id.* ¶¶ 64-113.) The complaint alleges seven counts against Defendants: trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a) (Count I); fraudulent trademark registration in violation of the Lanham Act, 15 U.S.C. § 1120 (Count II); copyright infringement (Count III); tortious interference with a business expectancy (Count IV); violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILL. COMP. STAT. 510/1 *et seq.* (Count V); conspiracy to commit trademark infringement (Count VI); and conspiracy to commit copyright infringement (Count VII). (*Id.*) The day after they filed their complaint, Plaintiffs moved for a temporary restraining order seeking to enjoin Defendants from using the DEL REY trademarks and artwork. (R. 8, Mot. for TRO at 1.) The Court granted Plaintiffs' motion for a temporary restraining order on April 4, 2018. (R. 15, Order; R. 16, TRO.)

On April 27, 2018, Defendants filed a motion to dismiss the complaint for improper venue. (R. 24, Mot.) On May 7, 2018, Defendants filed an amended motion, which is the motion presently before the Court. (R. 27, Am. Mot.) Defendants contend that venue is improper in this District because the complaint alleges events and business relationships that occurred outside of

this District. (R. 28, Mem. at 2.) Defendants argue that venue is more appropriate in the Northern District of Texas and that this case should be transferred there. (*Id.* at 2-3.) In support, Defendants offer the affidavit of Moisés Brito, who states that he has lived in Texas for 33 years and that Urbina will be moving to Texas from Illinois in the summer of 2018. (R. 28-1, Moisés Brito Aff. at 2.) Moisés Brito further declares that he received Plaintiffs' mole shipments in Texas, and that any alleged failure to pay for mole shipments occurred in Mexico or Texas. (*Id.* at 3.) Moisés Brito states that by 2016, he no longer conducted any business with Plaintiffs or sold mole; however, his mole products "may have remained in stores[.]" (*Id.*)

In response, Plaintiffs argue that venue is proper in this District because a substantial part of the events giving rise to their claims occurred in this District, namely, the alleged trademark and copyright infringement. (R. 29, Resp. at 2-3.) Plaintiffs also contend that venue is proper because Urbina currently resides in this District, and because the events that occurred in Texas and Mexico do not require dismissal for improper venue. (*Id.* at 3.) In support, Plaintiffs attach the declarations of Enrique Garcia ("Garcia"), the vice president of Mexcelanius, and Leticia Hernandez ("Hernandez"), an employee at a Chicago grocery store. (R. 30, Garcia Decl.; R. 31, Hernandez Decl.) Garcia states in his declaration that Mexcelanius has been unable to sell DEL REY mole at numerous stores in the Chicago area because those stores have already bought Defendants' counterfeit mole. (R. 30, Garcia Decl. at 1.) Hernandez states in her declaration that, in the summer of 2016 and in February 2018, she observed Defendants appear in person to sell counterfeit mole at a Chicago grocery store. (R. 31, Hernandez Decl. at 1.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(3) allows for dismissal of a complaint when venue is improper. FED. R. CIV. P. 12(b)(3). "Once a defendant challenges the plaintiff's choice of

venue, the plaintiff bears the burden of establishing that it filed its case in the proper district." *Brne v. Inspired eLearning*, No. 17-CV-02712, 2017 WL 4263995, at *2 (N.D. Ill. Sept. 26, 2017). When considering a motion to dismiss under Rule 12(b)(3), "the district court assumes the truth of the allegations in the plaintiff's complaint, *unless* contradicted by the defendant's affidavits." *Deb v. SIRVA, Inc.*, 832 F.3d 800, 809 (7th Cir. 2016) (emphasis in original). Thus, "the district court is not obligated to limit its consideration to the pleadings or to convert the motion to one for summary judgment if the parties submit evidence outside the pleadings." *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 810-11 (7th Cir. 2011) (citation, internal quotation marks, and alteration omitted). The Court, however, "must resolve any factual disputes and draw all reasonable inferences in the plaintiff's favor." *Nicks v. Koch Meat Co.*, 260 F. Supp. 3d 942, 952 (N.D. Ill. 2017). If venue is improper, the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

## ANALYSIS

Under 28 U.S.C. § 1391(b), a civil action may be brought in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with

respect to such action." 28 U.S.C. § 1391(b). Plaintiffs alleged in their complaint that venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).[1] (R. 1, Compl. ¶ 9.)

Under Section 1391(b)(2), "the test is not whether a majority of the activities pertaining to the case were performed in a particular district, but whether a substantial portion of the activities giving rise to the claim occurred in a particular district." *Nicks*, 260 F. Supp. 3d at 952 (citation and internal quotation marks omitted). "For events to be considered 'substantial' under the statute, it is sufficient for the plaintiff to establish that the events occurring in the forum district were part of the historical predicate for the instant suit." *Jackson v. N'Genuity Enters., Co.*, No. 14 C 2197, 2014 WL 4269448, at *6 (N.D. Ill. Aug. 28, 2014) (citation, internal quotation marks, and alteration omitted).

Additionally, "[v]enue may be proper in more than one court[.]" *Armstrong v. LaSalle Bank Nat. Ass'n*, 552 F.3d 613, 617 (7th Cir. 2009); *see also Imperial Crane Servs., Inc. v. Cloverdale Equip. Co.*, No. 13 C 04750, 2013 WL 5904527, at *4 (N.D. Ill. Nov. 4, 2013) ("[Section] 1391(b)(2) does not require the court to determine the best venue for an action, but merely whether a substantial part of the events or omissions giving rise to the claim occurred in the judicial district in which the action was brought." (citation and internal quotation marks omitted)). Thus, "[i]f the selected district's contacts are 'substantial,' it should make no difference that another's are more so, or the most so." *Caldera Pharm., Inc. v. Los Alamos Nat. Sec., LLC*, 844 F. Supp. 2d 926, 929 (N.D. Ill. 2012) (citation omitted).

---

[1] Plaintiffs also allege that venue is proper pursuant to 28 U.S.C. § 1391(e), (R. 1, Compl. ¶ 9), but that provision only applies to actions where the defendant is an "officer or employee of the United States." *See* 28 U.S.C. § 1391(e); *Al-Marri v. Rumsfeld*, 360 F.3d 707, 709 (7th Cir. 2004) ("Venue in actions against federal officials is controlled by 28 U.S.C. § 1391(e)."). Neither Defendant is a federal official, and therefore Section 1391(e) does not provide grounds for venue.

In their complaint, Plaintiffs allege that Defendants have infringed their trademarks by selling counterfeit mole at various retail stores throughout the Chicago area, that those retail stores have expressed confusion as to whether Plaintiffs' product is authentic DEL REY mole, and that stores in the Chicago area have refused to buy and sell Plaintiffs' mole as a result. (R. 1, Compl. ¶¶ 54-56.) The declarations filed by Plaintiffs show that they have been unable to sell mole in the Chicago area due to Defendants' sale of mole in Chicago, and that Defendants have been observed selling allegedly counterfeit mole in the Chicago area. (R. 30, Garcia Decl. at 1; R. 31, Hernandez Decl. at 1.) Such evidence and allegations of infringement and resulting injury in this District are enough to establish that a "substantial portion" of the events giving rise to Plaintiffs' trademark and copyright infringement claims—the crux of their lawsuit—occurred in this District. *See Johnson v. Creighton Univ.*, 114 F. Supp. 3d 688, 697 (N.D. Ill. 2015) (denying motion to dismiss for improper venue because the "facts before the court easily satisf[ied]" Section 1391(b)(2)'s requirements given that the alleged tortious conduct and injury to the plaintiff occurred in Illinois); *Allstate Ins. Co. v. Regions Bank*, No. 13 C 5140, 2014 WL 440253, at *3 (N.D. Ill. Feb. 4, 2014) (denying motion to dismiss for improper venue because, among other things, the alleged injury occurred within the judicial district where venue was challenged). Accordingly, the Court finds that venue is proper in this District.

Defendants argue that venue is not proper in this District because "both Defendants will be Texas residents," and because the complaint "comprises . . . a history of events and relationships not occurring in Illinois, contracts and agreements not governed by Illinois law and between non-Illinois residents, and the use of websites and market success in non-Illinois markets." (R. 28, Mem. at 1, 2.) That Defendants "will be Texas residents," (R. 28, Mem. at 1), is not relevant to the venue inquiry because the Defendants' residence or planned residence has

9

nothing to do with the claims in this case, which involve the alleged unauthorized copying of Plaintiffs' trademarks and product in a way that misleads consumers. *See Allstate Ins. Co.*, 2014 WL 440253, at *2 ("Venue under § 1391(b)(2) looks not to the defendant's contacts with the forum, but the location of the events giving rise to the cause of action. (citation and internal quotation marks omitted)); *McCarthy v. Johannesson*, No. 11-CV-7423, 2012 WL 2116171, at *2 (N.D. Ill. June 11, 2012) ("The only thing tying this case to Illinois is Plaintiff's current residence, which has nothing to do with his claim. Under Plaintiff's theory, venue would be proper wherever he lives—which would mean that he could manufacture venue anywhere he decided to live.").[2] Nor does the Court find persuasive Defendants' argument that the complaint involves events lacking a connection to Illinois as well as relationships that do not implicate Illinois. As noted above, Plaintiffs allege that trademark and copyright infringement occurred in this District, and that they suffered resulting injuries in this District. (R. 1, Compl. ¶¶ 54-56.) Plaintiffs also allege that the business relationships at issue implicate Illinois because Moisés Brito entered into a distribution agreement with the Owner Plaintiffs to sell DEL REY mole in Illinois. (*Id.* ¶¶ 28-29.)

Finally, Defendants invoke 28 U.S.C. § 1406(a) and contend that this case should be transferred to the Northern District of Texas. (R. 28, Mem. at 2-3.) Section 1406(a), however, only allows for transfer of venue if venue is improper in this District. *See* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue *in the wrong division or district* shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." (emphasis added)); *Schwarz v. Sellers Markets,*

---

[2] Defendants' residence, if anything, undermines their argument for dismissal because Moisés Brito suggests in his declaration that Urbina was an Illinois resident during the time period implicated by the complaint. (R. 28-1, Moisés Brito Aff. at 2.)

10

*Inc.*, 812 F. Supp. 2d 932, 939 (N.D. Ill. 2011) ("Section 1406(a) can be invoked only if venue is improper in the district where the case was brought."). Because venue is proper in this District, Section 1406(a) does not apply. *See Schwarz*, 812 F. Supp. 2d at 939. Additionally, although Defendants argue that venue is more appropriate in Texas, where Moisés Brito lives and "the majority of non-foreign events giving rise to this dispute occur[ed]," (R. 28, Mem. at 2), the Court remains unconvinced that venue is proper in Texas. Based on the allegations and declarations before the Court, the Court cannot conclude that a "substantial portion" of the events giving rise to Plaintiffs' claims occurred in Texas such that venue is proper there. *See* 28 U.S.C. § 1391(b)(2).

There is no allegation that any trademark or copyright infringement occurred in Texas, and infringement is at the heart of the complaint.[3] Besides their claim that both Defendants "will" reside in Texas at some point in the future, Defendants point to no other connection between this action and Texas in their motion to dismiss. (R. 28, Mem. at 1-3.) Moisés Brito states in his affidavit that he received shipments of DEL REY mole in Texas. (R. 28-1, Moisés Brito Aff. at 2-3.) This fact, however, does not create a significant nexus between this case and Texas because the claims in this case relate primarily to copyright and trademark infringement that occurred outside of Texas. (R. 1, Compl. ¶¶ 54-62, 69.) There is no claim for breach of the distribution agreement pursuant to which Defendants received shipments of DEL REY mole in Texas. (*Id.* ¶¶ 64-113.) The Court, therefore, denies Defendants' amended motion to dismiss for improper venue. *See John Crane Inc. v. Simon Greenstone Panatier Bartlett, APC*, No. 16-CV-

---

[3] Plaintiffs allege that the distribution agreement—before it was allegedly terminated—allowed Moisés Brito to distribute DEL REY mole in Texas. (R. 1, Compl. ¶ 29.) There is no allegation, however, detailing any trademark or copyright infringement that occurred in Texas, and instead the allegations of infringement relate to conduct that occurred in Illinois and Georgia. (*Id.* ¶¶ 54-62, 69.)

11

05918, 2017 WL 1093150, at *13 (N.D. Ill. Mar. 23, 2017) (ruling that venue was not proper in the Northern District of Illinois because "even though there were some activities giving rise to [the] claim that occurred in this district, those activities were 'more tangential than substantial,' and are . . . insignificant when compared to the consistent and substantial activities that occurred in other districts"), *aff'd sub nom.*, *John Crane, Inc. v. Shein Law Ctr., Ltd.*, 891 F.3d 692 (7th Cir. 2018).

## CONCLUSION

For the foregoing reasons, Defendants' amended motion to dismiss for improper venue (R. 27) is DENIED. The parties shall appear for a status hearing on August 23, 2018, at 9:45 a.m. The parties are DIRECTED to reevaluate their settlement positions in light of this opinion and to exhaust all settlement possibilities prior to the status hearing.

ENTERED: 

Chief Judge Rubén Castillo
United States District Court

**Dated: August 2, 2018**